**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| QCX LLC<br><br>VERSUS<br><br>LIZ MURRILL, *ET AL.* | CIVIL ACTION NO.: 2:26-cv-2482<br>c/w 2:26-cv-2612<br>c/w 2:26-cv-2614<br><br>**Applies to: 2:26-cv-2614**<br><br>JUDGE: Hon. Lance M. Africk<br><br>MAGISTRATE: Hon. Karen Wells Roby |

**MEMORANDUM OF LAW IN SUPPORT OF GEMINI DEFENDANTS' MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

Gemini Titan, LLC, Gemini Olympus, LLC, Gemini Trust Company, LLC, and Gemini Space Station, Inc. (collectively, "Gemini" or the "Gemini Defendants") now submit this Memorandum of Law in support of their Motion to Dissolve the Temporary Restraining Order issued by the 21st Judicial District Court, Parish of Tangipahoa, on November 12, 2026, pursuant to Federal Rule of Civil Procedure 65(b)(4). Because the *ex parte* TRO does not satisfy the prerequisites of Federal Rule of Civil Procedure 65(b)(1), it must be dissolved.

**BACKGROUND**[1]

Gemini, through Gemini Titan LLC, operates a designated contract market ("DCM") registered with and regulated by the Commodity Futures Trading Commission ("CFTC"). Petition, *Louisiana v. Kalshi Inc. et al.*, No. 20260004268 ¶ 44 (La. 21st Jud. Dist. Ct. Nov. 12, 2026) (hereinafter "Pet."). As a DCM, Gemini must comply with the Core Principles of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 7(d) and the CFTC's implementing regulations. Those

[1] Gemini adopts and incorporates by reference the factual background in the motions to dissolve the TRO filed in this action by Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC (collectively, "Robinhood"), and Rothera Exchange and Clearing LLC ("Rothera"). (Dkts. 4, 8.)

obligations include providing "impartial access" to its event-contract markets and preventing "market disruptions." 17 C.F.R. §§ 38.151(b), 38.255.

In December 2025, Gemini began listing event contracts on its exchange through its Gemini Predictions platform. (Pet. ¶¶ 44, 146.) Eleven months later, on November 12, 2026, the state of Louisiana, through its Attorney General Liz Murrill ("Louisiana"), sought an *ex parte* temporary restraining order against Gemini and more than two dozen other Defendants, including numerous CFTC registrants, to enjoin their offering event contracts to Louisiana users on the grounds that such conduct allegedly amounts to illegal, unlicensed wagering under Louisiana state gambling laws. (*See* Pet.) That same day, the court issued the TRO *ex parte*. *See* Order Granting TRO, *Louisiana v. Kalshi Inc. et al.*, No. 20260004268 (La. 21st Jud. Dist. Ct. Nov. 12, 2026) (hereinafter "Order" or the "*ex parte* TRO"). The *ex parte* TRO bars defendants from "offering, listing, accepting, clearing, settling, brokering, making a market in, or otherwise facilitating or offering" event contracts related to, *inter alia*, sports and elections to persons located in Louisiana. (*Id.* at 2-3.) It also orders Gemini to "geofence the State of Louisiana" so that its event contracts are "not accessible to persons located within [Louisiana]." (*Id.* at 3.)

Gemini received no advance notice of the Petition. Gemini was never served with a copy of the Petition or the Order. Neither the Petition nor the Order was retrievable on the public docket until the following afternoon – after the *ex parte* TRO motion already had been granted and the Order entered. The only source of information indicating that the Order had even issued was a post on Attorney General Murrill's account on X.com from the evening of November 12, 2026, which contained photos of what appeared to be a copy of the Order, although Gemini could not verify its authenticity. Attorney General Liz Murrill (@AGLizMurrill), X (Nov. 12, 2026, at 5:48 p.m. CT), https://x.com/aglizmurrill/status/2121027283058041287?a=maIOQF4GjdCWB0hbuaA&s=46.

The court nonetheless found, without basis, that Gemini had "immediately received constructive notice of the Petition through media and other outlets." (Order at 2.)

The action was removed to this Court. (Dkt. 1.) On November 13, 2026, the United States and the CFTC filed a separate action seeking to enjoin Louisiana from enforcing its gambling laws against entities that offer CFTC-regulated event-contract markets. Complaint and TRO Motion, *United States v. Louisiana*, No. 2:26-cv-2612 (E.D. La. Nov. 13, 2026), Dkts. 1, 2. On November 14, 2026, Robinhood and Rothera moved to dissolve the *ex parte* TRO. (Dkts. 4, 8.) Gemini joins the arguments made in those motions, incorporates them by reference, and herein includes relevant additional arguments specific to Gemini.

## ARGUMENT

Louisiana cannot show that it faced "immediate and irreparable injury" absent an *ex parte* TRO, as required by Federal Rule of Civil Procedure 65(b)(1), for three reasons. First, the conduct enjoined by the *ex parte* TRO falls squarely within an exception to Louisiana's gambling laws. The Petition's lack of merit means Louisiana was never at risk of any harm. *See Westley v. Harper*, 2025 WL 592788, at *8 (E.D. La. Feb. 24, 2025) (denying motion for preliminary injunction, dissolving TRO, and holding "there is no irreparable harm" where petitioner failed to establish that respondent violated laws). Second, even if the exception does not apply, Louisiana's gambling laws are preempted by federal law. Third, Louisiana's inordinate delay in seeking the *ex parte* TRO undermines its purported need for "immediate" *ex parte* relief. Each basis independently supports dissolving the *ex parte* TRO.

### I. Gemini's Event Contracts and DCM Transactions Are Excluded from Liability Under Louisiana's Gambling Laws.

The *ex parte* TRO rests on Gemini's alleged violation of Louisiana's Gambling by Computer Law, La. R.S. 14:90.3, which in turn is premised on classifying Gemini's offering event

contracts on its DCM as illegal, unlicensed gambling. (Order at 2.) However, both the event-contract transactions offered by Gemini and the DCM on which those transactions are executed bring Gemini's challenged conduct directly within the ambit of the exception in Subsection M of La. R.S. 14:90.3: "Nothing in this Section shall prohibit, limit, or otherwise restrict the purchase, sale, exchange, or other transaction related to . . . futures, options, commodities, or other similar instruments or transactions occurring on a . . . commodities exchange . . . or similar entity." La. R.S. 14:90.3(M).

As Robinhood and Rothera detail in their respective motions, the type of event contracts Gemini offers are "swaps" under the CEA, thus bringing them within the excluded category of "futures, options, commodities, or other similar instruments" in Subsection M. (Dkt. 4-1 at 7-12.) Indeed, Louisiana's own Petition observes that Gemini offers event contracts based on occurrences associated with the price of Bitcoin, gold, and the S&P 500 index (Pet. ¶ 148), which are commodity and index derivatives enumerated in 7 U.S.C. § 1a(47)(A)(iii).

Even if the Court finds that Gemini's event contracts are not "transaction[s] related to . . . futures, options, commodities, or other similar instruments," Subsection M's exception for "transactions occurring on a . . . commodities exchange . . . or similar entity" applies. Gemini's DCM on which its event contracts transact is a "commodities exchange." The CFTC has designated Gemini's DCM as a contract market under federal commodities law. That designation carries obligations to comply with the CEA's core principles and CFTC regulations. 7 U.S.C. §§ 2(e), 7; 17 C.F.R. § 38.3(a). Under a plain reading of Subsection M, Louisiana has not been and cannot be injured by the transaction of Gemini's event contracts on its DCM. *See also* La. Civ. Code art. 9. (requiring clear and unambiguous laws to be applied as written); *Leon v. Diversified Concrete, LLC*, 225 F. Supp. 3d 596, 600 (E.D. La. 2016) ("Unequivocal provisions are not subject

to judicial construction and should be applied by giving words their generally understood meaning"). Louisiana's reliance on La. R.S. 27:19.2(A) as evidence of irreparable harm fails concomitantly with its claim under La. R.S. 14:90.3. *See* La. R.S. 27:19.2(A) ("[a] ***violation*** of this Chapter shall conclusively be determined irreparable harm") (emphasis added). Louisiana has failed to establish Gemini has violated the state gambling laws.

## II. Louisiana's Gambling Laws Are Preempted by the CEA.

Gemini joins Robinhood's and Rothera's arguments that Louisiana's gambling laws are preempted by the CEA under the doctrines of express preemption, field preemption, and conflict preemption. Gemini submits an additional reason that "compliance with both federal and state regulations is a physical impossibility," and Louisiana's gambling laws "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

Federal law requires Gemini, as a DCM, to engage in the very activities from which it would be restrained in order to remain in compliance with state law as Louisiana describes it. The Core Principles require Gemini to, *inter alia*, provide "impartial access" to its markets, 17 C.F.R. § 38.151(b), and to prevent "market disruptions," 17 C.F.R. § 38.255. Indeed, CFTC regulations forbid a DCM from "limit[ing] access" to an exchange "based on the location of an otherwise eligible market participant within the United States." 91 Fed. Reg. 72,407, 72,409 (Nov. 10, 2026). However, the *ex parte* TRO forces Gemini to create the very disruptions on its own exchange that its federal obligations require it to prevent. A DCM may not limit access to what is meant to be a national exchange based on geography. *See* 17 C.F.R. § 38.151(b). Further, the risk that an entire state's worth of market participants could, without warning, vanish from a national exchange now must be priced into every event contract. The resulting skewing effect on prices and market disruption undermines the price-discovery function on which Gemini's users rely and is the very

harm that Gemini, as a DCM, must prevent under Core Principle 4, 17 C.F.R. § 38.255. Accordingly, it is "impossible for [Gemini] to comply with both state and federal law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

**III. Louisiana's Purported Injury Is Not "Immediate."**

Louisiana's inordinate delay in seeking an *ex parte* TRO against Gemini demonstrates that it has not shown it is entitled to a TRO, much less that it will suffer the requisite "immediate" harm unless it receives *ex parte* relief before Gemini had a chance to oppose the motion.

A TRO may be issued *ex parte* only if "the irreparable harm is so imminent or immediate that the party seeking relief cannot wait until the opposing party receives notice and a hearing for a preliminary injunction can be held." *Premium Parking Serv., LLC v. Olivier*, 2023 WL 5275219, at *3 (E.D. La. Aug. 16, 2023). "[D]elay" in seeking a TRO "undermines plaintiff's assertion that is [sic] has suffered and will continue to suffer irreparable harm without the immediate relief provided by a TRO." *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 2022 WL 137051, at *3 (E.D. La. Jan. 14, 2022). That is because "[a] plaintiff's delay in seeking a temporary restraining order is . . . an indication that there is no immediate threat." *Olivier*, 2023 WL 5275219, at *3 (citation omitted). Accordingly, "[c]ourts have routinely held that an unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Id.* (internal quotation marks and citation omitted).

Louisiana's delay in seeking an *ex parte* TRO against Gemini undermines any notion that it faced an immediate threat of harm. According to Louisiana's Petition, Gemini began offering event contracts to Louisiana users "[i]n December 2025." (Pet. ¶ 44.) However, that same month, the Louisiana Gaming Control Board issued an Advisory Notice declaring certain event contracts "illegal gambling" in violation of La. R.S. 14:90 and 14:90.3. STATE OF LOUISIANA GAMING CONTROL BOARD, ADVISORY NOTICE REGARDING PREDICTION MARKETS (Dec. 5, 2025),

https://lgcb.dps.louisiana.gov/media/fgfaspij/20251205-prediction-market-notice.pdf. A few months later, on March 12, 2026, Attorney General Murrill opined that prediction markets may be illegal gambling operations. Aidan McCahill, *Jail break, election betting: These bets are illegal in Louisiana. But the state can't stop them*, THE ADVOCATE (Mar. 12, 2026), https://www.theadvocate.com/baton_rouge/news/prediction-markets-illegal-louisiana-loophole-kalshi-polymarket/article_b032de66-0745-4502-b195-d41e01703e41.html. Despite these proclamations, Louisiana waited ***eleven months*** before taking action. Indeed, Louisiana's own Petition alleges that Defendants have been carrying out illegal gambling operations in Louisiana "[f]or well over a year now." (Pet. ¶ 14.) Such a protracted delay cannot be squared with the requirement in Rule 65 that the movant "***clearly*** show that ***immediate*** and irreparable injury" will result absent *ex parte* relief. Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). Several courts in this District have denied or dissolved TROs where the challenged conduct persisted for far less time before a TRO was sought. *See, e.g.*, *New Orleans Catering, Inc. v. Cantrell*, 2020 WL 12739802, at *1 (E.D. La. Nov. 6, 2020) (denying TRO where plaintiff delayed several weeks in seeking relief); *Krispy Krunchy Foods*, 2022 WL 137051, at *3 (denying TRO where plaintiff waited more than one month before seeking relief). Louisiana's procrastination should preclude any finding that it faced "immediate" harm absent *ex parte* relief.

Further, Louisiana's decision not to take any action against Gemini for eleven months created a status quo in which Gemini offers a federally compliant DCM in Louisiana free from unlawful interference by the Louisiana state government. "[T]he purpose of a temporary restraining order is to preserve the status quo." *Cantrell*, 2020 WL 12739802, at *1. Accordingly, the Court should dissolve the *ex parte* TRO in order to uphold this status quo. *See id.* (denying

TRO where mayor's challenged actions had been ongoing for "many months" and finding "the status quo favors the Mayor").

## CONCLUSION

For the aforementioned reasons, the Court should grant the motion.

Dated: November 20, 2026

TAYLOR WELLONS POLITZ & DUHE, LLC

By: *s/ Michael Mann Thompson*
Michael Mann Thompson (Bar Roll No. 30758)
Paul J. Verlander (Bar Roll No. 19196)
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809
Telephone: (225) 387-9888
Fax: (225) 387-9886
Email: mthompson@twpdlaw.com
pverlander@twpdlaw.com

KATTEN MUCHIN ROSENMAN LLP

By: */s/ Sarah Weber*
Christian T. Kemnitz*
Brian J. Poronsky*
Sarah Weber*
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
christian.kemnitz@katten.com
brian.poronsky@katten.com
sarah.weber@katten.com

Daniel J. Davis*
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave., N.W., Ste. 800
Washington, DC 20006
Telephone: (202) 625-3500
daniel.davis@katten.com

**Pro hac vice* forthcoming

*Attorneys for Gemini Space Station, Inc.,*
*Gemini Titan, LLC, Gemini Olympus, LLC,*
*and Gemini Trust Company, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading was served on November 20, 2026 by electronic filing through the courts electronic filing using the CM/ECF system upon all counsel of record.

*s/ Michael Mann Thompson*__________
Michael Mann Thompson